GAINSCO COUNTY MUTUAL INSURANCE COMPANY and the Estate of Rogelio C. Hernandez, Deceased, Laura T. Hernandez, Administrator and/or Community Survivor of the Estate of Rogelio C. Hernandez, Deceased, Appellants,

v.

Jose Luis MARTINEZ, Appellee.

No. 04–99–00045–CV.

Court of Appeals of Texas, San Antonio.

July 5, 2000.

Frank Herrera, Jr., Laura E. Gutierrez Tamez, Law Office of Frank Herrera, Inc., Wallace B. Jefferson, Jacqueline M. Stroh, Crofts, Callaway & Jefferson, P.C., Thomas W. Gendry, Gendry & Sprague, San Antonio, for appellants.

Baldemar Garcia, Jr., Person, Whitworth, Ramos, Borchers & Morales, Laredo, for appellee.

Sitting: TOM RICKHOFF, Justice, CATHERINE STONE, Justice, PAUL W. GREEN, Justice.

**OPINION**

Opinion by: CATHERINE STONE, Justice.

This appeal arises from a personal injury lawsuit. In nine issues, appellants Gainsco and the Estate of Rogelio Hernandez contend a fatal conflict exists in the jury's damage award, the trial court erred in numerous evidentiary rulings, and insufficient evidence exists to support the damage awards.[1] Because we hold there is no fatal conflict and the evidence supports the verdict, we affirm the judgment of the trial court.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1995, Rogelio C. Hernandez, an intoxicated, unlicensed, and uninsured motorist, drove his truck into the back of an eighteen wheel tractor-trailer driven by appellee Jose Luis Martinez ("Martinez"). The collision killed Hernandez. Martinez later filed a claim with his employer's insurer, Gainsco, for injuries he sustained to his back, neck, and leg as a result of the accident. When Gainsco contested Martinez's claim, he filed suit against Gainsco and Hernandez's estate. At trial, the jury returned a verdict in favor of Martinez, awarding $86,400 in past lost earning capacity, $45,000 in future lost earning capacity, $36,500 in future physical impairment, $37,205.65 in past reasonable and necessary medical care, and $15,000 in future reasonable and necessary medical care. The jury entered a zero damage finding for past or future physical pain and mental anguish. Additionally, the jury awarded zero damages for physical impairment in the past.

**DAMAGE AWARDS**

In its first and second issues, Gainsco challenges the jury's damage awards for past and future lost earning capacity, future physical impairment, and future medical care, on the grounds that the awards fatally conflict with the zero damage findings for past or future physical pain and mental anguish and past physical impairment.

In reviewing the jury findings for conflict, the threshold question is whether the findings concern the same material fact. *Bender v. Southern Pac. Transp. Co.*, 600 S.W.2d 257, 260 (Tex.1980). A court may not strike jury answers on the ground of conflict if there is any reasonable basis upon which they can be reconciled. *Id.* The court must "reconcile apparent conflicts in the jury's findings" if reasonably possible in light of the plead-

---

1. Hernandez filed a separate brief, but raised the same issues as those set out in Gainsco's brief. We address the issues in the order presented by Gainsco, and refer to appellants collectively as "Gainsco."

102 ■

ings and evidence, the manner of submission, and the other findings considered as a whole. *Id; Biggs v. GSC Enters., Inc.,* 8 S.W.3d 765, 767 (Tex.App.-Fort Worth 1999, no pet.). The party seeking to set aside an allegedly conflicting finding bears the burden of showing that one of the conflicting jury answers necessarily requires a judgment different from the judgment the trial court rendered. *Lee v. Huntsville Livestock Servs., Inc.,* 934 S.W.2d 158, 160 (Tex.App.–14th Dist. 1996, no writ).

■ Gainsco asserts the jury's findings on physical pain, impairment, lost earning capacity, and medical expenses all relate to the same material fact: the pain Martinez sustained as a result of the accident. Gainsco contends that the evidence introduced at trial established that if Martinez suffered any incapacity at all, it was solely as a result of the pain he experienced. Gainsco claims the jury's failure to award damages for past or future physical pain is proper because Martinez lied to his physicians about prior injuries, thereby permitting the jury to disbelieve his testimony about the pain he claims he suffered as a result of the accident. Gainsco thus argues that the jury's awards of other damages for impairment, lost wages, and lost earning capacity, fatally conflict with the zero damage award for physical pain.

In support of its argument, Gainsco primarily relies on *Kelley* and *Lee.* In *Kelley v. Atlantic Gulf Stevedores, Inc.,* a personal injury case, the court held the jury's finding of lost future wages fatally conflicted with its finding of no lost past wages because it was inconsistent for the jury to deny damages for the loss of past wages after granting damages for the expected loss of future wages. 681 S.W.2d 275, 278–79 (Tex.App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.). In *Lee,* another personal injury case, the court held a fatal conflict existed between the jury's award for future loss of earning capacity and future physical impairment, and the jury's failure

to award damages for future pain and mental anguish. 934 S.W.2d at 159.

We distinguish those cases on the evidence presented here. As discussed by the court in *State Farm County Mut. Ins. Co. v. Moran,* 809 S.W.2d 613, 615 (Tex. App.-Corpus Christi 1991, writ denied), damage findings which at first blush appear inconsistent, may often be reconciled. *Moran* involved an inconsistent damage award where the jury failed to award damages for past physical injuries but awarded damages for future physical injuries. *Id.* at 620. Although the conflict in *Moran* was irreconcilable, the court recognized the possibility for an accident victim to sustain a present injury that fails to manifest itself in the form of pain, impairment, or medical expenses until some uncertain future date. *Moran,* 809 S.W.2d at 620.

After a review of the record, we hold the testimony offered by Martinez supports a reconcilable damage award of the kind contemplated by the court in *Moran.* At trial, Martinez testified that although he felt some pain in his body, he felt more nervous than pain immediately after the collision. On cross examination, he testified that two weeks after the accident, he began experiencing pain all over his body, specifically in his neck, back, and shoulders. He further testified if he stands for prolonged periods of time, he frequently falls because his legs do not respond.

Dr. Valdez, one of the physicians who treated Martinez, testified about a steady progression of medical complications exhibited by Martinez which Dr. Valdez directly attributed to the collision. Approximately six months after the accident, Dr. Valdez initially treated Martinez for a rotator cuff injury to his shoulder. In April 1996, Dr. Valdez determined that in addition to the rotator cuff injury, Martinez sustained injuries to his cervical spine and lumbar disks in his back. On direct examination, Dr. Valdez testified that although these injuries limited Martinez's ability to work because of pain, *"what limited his ability to work more was the fact that he*

*had some weakness involved in these areas,* which made his right arm and legs unsafe. And so driving or having to lift things or move things around would be something that would not be possible in terms of safety to himself and to others." (emphasis added).

Keeping in mind our duty to reconcile inconsistent jury findings where a reasonable explanation exists, we hold the jury could have reached the conclusion that Martinez's injuries were still evolving and that the full extent of his injuries would not be evident until the future. Unlike *Moran* where the court found no evidence to suggest that the plaintiff would incur future pain, impairment, and expense, the jury here heard testimony from Dr. Valdez concerning a long-term unfavorable prognosis for Martinez. Dr. Valdez testified Martinez would continue to experience future shoulder and back problems despite elective back surgery. The jury may well have determined from this testimony that progressive weakness and decreased stamina—factors which manifested themselves at a future date, precluded Martinez from working. An entry of zero damages for past and future pain is consistent with such a determination.

■ The zero damage award for physical pain and mental anguish can be sustained for another reason. While physical injuries are often accompanied by pain, anguish, and impairment, "the fact of an injury does not prove compensable pain and suffering or impairment." *Biggs,* 8 S.W.3d at 769. In *Biggs* the jury awarded the injured plaintiff damages for past medical expenses and for past lost earning capacity, but awarded no damages for past physical pain, mental anguish, or impairment. The jury likewise failed to award any amount for any future damages. On appeal the plaintiff contended the awards for past lost wages and past medical expenses fatally conflicted with the zero awards for pain, mental anguish, and impairment. *Id.* at 767. Indeed, the plaintiff made the same argument advanced by Gainsco, contending that the jury's findings all involved the same material issue of whether the plaintiff sustained physical pain as a result of the accident in question. The court rejected this argument, noting that while the record revealed the plaintiff was in pain, there was conflicting evidence about the cause of the pain. *Id.* at 769. Like Martinez, the *Biggs* plaintiff had a history of pre-existing injuries and chronic pain, much of which he had not shared with his current doctor. This conflicting evidence was for the jury to resolve, and the jury could have concluded that "any pain or impairment resulting from the accident was too minimal to warrant a monetary award, but that [the plaintiff] should be fairly compensated for seeking medical care and missing some work...." *Id.* Though the instant case finds the defendant, rather than the plaintiff, making the argument about fatally conflicting jury findings, the principles are the same and should be applied the same regardless of which party seeks reversal because of allegedly conflicting jury findings.

In his brief, Martinez provides an equally plausible ground for reconciling the inconsistent damage award. Martinez contends the jury's failure to award damages for past physical impairment corresponds to Gainsco's theory of the case. Gainsco attempted to characterize Martinez as a malingerer who linked his pre-existing injuries to the subject accident. In support of its theory, Gainsco developed extensive testimony to show Martinez suffered from degenerative disk disease in his back. Martinez argues the jury could have awarded zero damages for past and future pain, but awarded other types of past and future damages on the notion that the accident exacerbated a pre-existing degenerative condition. *See Southwest Texas Coors, Inc. v. Morales,* 948 S.W.2d 948, 949 (Tex.App.-San Antonio 1997, no pet.)(holding sufficient evidence existed to award claimant damages for aggravation to a pre-existing medical condition). Under such a scenario, the jury's verdict would not

award damages to Martinez for his pre-existing condition, but it would award damages for exacerbation of the pre-existing condition.

Thus, several potential grounds for reconciling the jury awards exist, and we are duty-bound to reconcile the jury's answers.[2] Accordingly, we overrule Gainsco's first two issues.

### WITNESS TESTIMONY

■ In issues three through seven, Gainsco challenges the trial court's rulings on the admissibility of testimony from multiple witnesses. To obtain reversal based upon an erroneous evidentiary ruling, the appellant must show first, that the trial court did in fact commit error, and second, that the error was reasonably calculated to cause and probably did cause the rendition of an improper verdict. TEX.R.APP. P. 44.1; *McCraw v. Maris,* 828 S.W.2d 756, 757 (Tex.1992). The admission or exclusion of evidence rests within the sound discretion of the trial court. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). The trial court's ruling will not be disturbed absent evidence that it acted unreasonably, arbitrarily, or without reference to any guiding legal principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A reviewing court must examine "the entire record to determine whether the judgment was controlled by the testimony that should have been excluded." *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989).

■ In its third issue, Gainsco complains the trial court erred in admitting testimony from Officer Javier Hernandez, who prepared the accident report and testified on the issues of vehicle speed and force of impact. Gainsco contends the officer failed to qualify as an expert because he never received accident reconstruction training. *See* TEX.R. EVID. 702 (permitting expert testimony on the basis of knowledge, skill, experience, training, or education).

■ Generally, a law enforcement officer is not qualified to render an expert opinion regarding an accident simply by virtue of his position. *See Pyle v. Southern Pac. Transp. Co.,* 774 S.W.2d 693, 695 (Tex.App.-Houston [1st Dist.] 1989, writ denied). However, an officer may offer expert testimony in accident cases if the party proffering the testimony demonstrates that the officer is trained in the science about which he will testify and possesses the high degree of knowledge sufficient to qualify him as an expert. *Rogers v. Gonzales,* 654 S.W.2d 509, 512–13 (Tex.App.-Corpus Christi 1983, writ ref'd n.r.e.) No definite guidelines exist for determining whether a particular witness possesses the knowledge, skill, or expertise to qualify as an expert. *Id.* at 512. Thus, the determination of whether an officer is qualified to testify as an expert is a discretionary matter left to the trial court. *Bilderback v. Priestley,* 709 S.W.2d 736, 741 (Tex.App.-San Antonio 1986, writ ref'd n.r.e.). The trial court's determination will not be disturbed on appeal absent a clear abuse of that discretion. *DeLeon v. Louder,* 743 S.W.2d 357, 359 (Tex.App.-Amarillo 1987, writ denied).

Here, Officer Hernandez admitted on cross examination that he had never received accident reconstruction training, al-

---

**2.** We acknowledge that Martinez claims Gainsco waived its complaint regarding conflicting jury findings because Gainsco did not object to the allegedly conflicting jury findings until after the jury was discharged, thereby depriving the trial court of any opportunity to issue additional instructions and retire the jury for further deliberations. *See* TEX.R. CIV. P. 295 (Correction of Verdict); TEX.R.APP. P. 33.1(Preservation of Appellate Complaints); *Torres v. Caterpillar, Inc.,* 928 S.W.2d 233, 244–45 (Tex.App.—San Antonio 1996, writ denied) (finding waiver of conflict between no liability finding and 5% causation finding because complaint not raised before jury discharged). Gainsco contends there is no waiver because additional instructions would have constituted àn impermissible comment on the evidence. We have found no case law to support Gainsco's claim, but in an abundance of caution we have passed on the waiver issue and have addressed the merits.

though he had investigated prior accident scenes. The officer agreed that at the time of the accident, he had only served on the police force for four months and was still in training. Further, the officer had never investigated an accident fatality prior to the Martinez accident. The officer based his conclusions regarding the speed of Hernandez's vehicle and force of the impact with Martinez's tractor-trailer upon his own observations and assumptions at the scene of the accident, and upon witnesses' statements.

■ In the absence of evidence to demonstrate some qualification in accident reconstruction training, we hold the trial court erred in admitting the officer's testimony on these issues. In conducting a harmless error analysis, however, we cannot say in light of other properly admitted evidence, that the judgment was controlled by this erroneously admitted testimony. *See* TEX.R.APP. P. 44.1(a); *Gee,* 765 S.W.2d at 396. Although Gainsco contends the officer's testimony regarding the speed of Hernandez's vehicle and the force of the impact with Martinez's trailer was unique and therefore harmful, the jury heard conflicting testimony from various witnesses.

Gainsco's biomechanical expert, Dr. Richard Howard, testified that he conducts studies on the legitimacy of the injury claimed in an accident. Relying upon the pictures taken of the vehicles at the accident scene and the accident report, Dr. Howard concluded the force of impact sustained by the Martinez tractor-trailer was minimal based upon the tonnage disparity with the Hernandez pick-up. Dr. Howard testified based upon the vehicle structure, that Hernandez never exceeded 65 miles per hour. Dr. Howard concluded Martinez's injuries could not have resulted from the impact of the collision. Despite these conclusions, the jury could have disbelieved this testimony. *See Novosad v. Mid–Century Ins. Co.,* 881 S.W.2d 546, 548 (Tex.App.-San Antonio 1994, no writ)(recognizing the jury is the ultimate arbiter of witness credibility and weight of their testimony).

Even without the officer's testimony, the jury heard testimony from other witnesses who reached substantially the same conclusions regarding speed and force of impact. Dr. Valdez testified that the subject accident caused the injuries to Martinez's shoulder, neck, and back. He also testified that any pre-existing injuries were aggravated by the *high-speed* rear-end collision. (emphasis added). The jury also heard testimony from Dr. Somerville, Martinez's pain management specialist. Dr. Somerville indicated Martinez's injuries were consistent with someone involved in a rear-end collision. He further testified that neck injuries can result even from a low speed, low impact collision. Finally, the jury heard testimony from Martinez, who stated that he observed Hernandez's pickup approaching behind him very fast. In light of the properly admitted testimony from these witnesses, we cannot say that the erroneous admission of the officer's testimony resulted in the rendition of an improper verdict or controlled the judgment. *See Gee,* 765 S.W.2d at 396. Accordingly, the admission of Officer Hernandez's testimony does not constitute reversible error. We overrule Gainsco's third issue.

■ In its fourth issue, Gainsco complains the trial court erred in admitting testimony from Dr. Carl Hansen, Martinez's vocational rehabilitation expert. Dr. Hansen testified that as a rehabilitation counselor, he evaluates the extent of a plaintiff's disability and determines the potential occupations the plaintiff is able to perform. Dr. Hansen also offered expert testimony concerning the issue of lost wages. Gainsco argues Dr. Hansen's testimony was unnecessary to assist the jury in reaching its damage sum for lost wages. *See* TEX.R. EVID. 702. Gainsco also complains Dr. Hansen rendered medical opinions which was improper because he is not a medical doctor.

▮ In order to obtain reversal of a judgment based upon error in the admission of the evidence, the appellant must show that the trial court abused its discretion and that the resulting error was calculated to cause and probably did cause the rendition of an improper judgment. *Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989).

Here, the jury also heard rebuttal testimony from Gainsco's own vocational rehabilitation expert, William Quintanilla. Quintanilla reviewed the depositions of Martinez and Dr. Valdez, the vocational report of Dr. Hansen, Martinez's IRS records, medical reports from Gainsco's expert neurologist Dr. Senelick, reports from Dr. Howard, and other medical records. In direct contrast to Dr. Hansen's testimony, Quintanilla testified Martinez was capable of working after the accident. Based upon Martinez's past work history, Quintanilla concluded Martinez could seek work in the areas of taxi driving, maquiladora type work in Mexico, or street sweeping.

▮ The jury received conflicting testimony on the issue of Martinez's potential earning capacity and physical ability to work. Appellate courts are disinclined to second-guess the determination of the jury in light of conflicting testimony. *See Lawson–Avila Constr., Inc. v. Stoutamire,* 791 S.W.2d 584, 594 (Tex.App.-San Antonio 1990, writ denied). We overrule Gainsco's fourth issue.

▮ In its fifth and sixth issues, Gainsco argues the trial court erred in excluding portions of testimony from two of its experts. Gainsco first contends the trial court erred in excluding a section of lost wage conclusions from vocational rehabilitation expert Quintanilla. The trial court permitted Quintanilla to testify based upon a two-year calculation of Martinez's past wage history, but prevented any testimony based upon a five or ten-year calculation. Martinez responds Gainsco failed to properly disclose the substance of this testimony prior to trial. *See* Tex.R. Civ. P. 192.3(e); *Aluminum Co. of Am. v. Bullock,* 870 S.W.2d 2, 4 (Tex.1994)(providing litigant must disclose expected substance of expert witness testimony in order to comply with rules of discovery). Arguably Gainsco failed to comply with Texas Rule of Civil Procedure 192.3(e), but even if we assume the trial court erred, we cannot hold the excluded wage conclusions controlled the judgment in light of Quintanilla's testimony as a whole. *See Gee,* 765 S.W.2d at 396.

▮ Gainsco next argues the trial court erred in excluding portions of testimony from biomechanical expert Dr. Richard Howard which related to Martinez's pre-existing injury and lack of pain immediately following the accident. Gainsco sought to establish the cause of Martinez's injury related to degenerative disk disease rather than the accident. Gainsco objected specifically to its inability to question Dr. Howard regarding the length of time it takes to develop bone spurs and the immediate symptoms he would expect to see from a significant spinal injury. Although Gainsco argues the trial court precluded Dr. Howard from testifying in detail about evidence of pre-existing injuries, the record reveals the trial court permitted Gainsco to delve into the existence of bone spurs and other evidence to suggest degenerative disk disease. Moreover, the jury heard substantially similar evidence related to degenerative disk disease from Dr. Senelick, Gainsco's expert neurologist who specializes in rehabilitation. The jury heard the following testimony from Dr. Senelick:

Q: All right. And with respect to the cervical spine, what does it [radiology report] show?

A: ... It shows small to moderate size osteophytes, which are spurs at the level of C5–6, which would be the 5th and 6th bone in the neck.

* * * *

Q: All right. How long does it take for these spurs to form in a degenerative condition?

A: It takes years.

Q: Do you have an opinion whether or not Mr. Martinez had a pre-existing condition of degeneration to the cervical spine resulting in spurring?

A: Yes. If this— if this was pre-existing and clearly has evidence of pre-existing disease based on old x-rays prior to the accident in these x-ray findings.

Thus, the substance of this cumulative evidence considered by the jury renders any alleged error in the excluded testimony harmless. *See Hooper v. Torres*, 790 S.W.2d 757, 761 (Tex.App.-El Paso 1990, writ denied). Finding no reversible error on these facts, we overrule Gainsco's fifth and sixth issues.

▆▆▆ In its seventh issue, Gainsco complains the trial court erred in preventing a proper impeachment of Martinez on the subject of his pre-existing injuries. At trial, the court admitted deposition testimony from Martinez but refused to allow Gainsco to impeach Martinez with his answer to an interrogatory in which he denied prior injuries or medical conditions. While Gainsco objects to the trial court's refusal to allow impeachment via the interrogatory, we find that the same evidence was nevertheless introduced by Martinez's own deposition and through additional witness testimony. *See Hooper*, 790 S.W.2d at 761. A review of the record reveals the trial court allowed a thorough cross-examination of Martinez on the issue of his pre-existing injuries. Specifically, Gainsco inquired into a prior work-related back injury from lifting heavy metal and a fall which also resulted in back problems. Further, Gainsco developed the existence of Martinez's pre-existing injuries through the testimony of its experts. For example, the jury heard the following conclusions during Dr. Senelick's direct examination:

Q: In summary, what was the baseline of Mr. Martinez's back before the accident of August the 18th, 1995?

A: I think if we look at Mr. Martinez and what the records show prior to the accident of August 1995, it's a gentleman who has a known history of back pain, leg pain, and known degenerative disease throughout his spine.

Q: And what was his baseline after the accident of August the 18th, 1995, based upon your review of the records, the exhibits, and the diagnostic studies?

A: The records will show there was no change in his imaging studies, so that in the plain x-rays, MRI scans, there was no change whatsoever.

From this properly admitted evidence, we hold any error in excluding the interrogatory harmless. Accordingly, we overrule appellant's seventh issue.

▆▆▆ In its eighth issue, Gainsco contends the cumulative effect of all of the above evidentiary challenges mandates reversal. Multiple errors, even if considered harmless when taken separately, may result in reversal and remand for a new trial if the cumulative effect of such errors is harmful. *Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 695 (Tex.App.-Texarkana 1991, writ denied). Before a reviewing court reverses the judgment below and orders a new trial, it must determine that the error committed by the trial court was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *See* Tex.R.App. P. 44.1(a); *Pool*, 813 S.W.2d at 695–96. An appellant must demonstrate that, based upon the record as a whole, but for the alleged errors, the jury would have rendered a verdict favorable to it. *Pool*, 813 S.W.2d at 696.

Gainsco fails to meet its burden. Since the trial court clearly erred in only one evidentiary ruling which we have held harmless, we cannot agree with Gainsco's cumulative error argument and overrule its eighth issue.

### SUFFICIENCY OF THE EVIDENCE

In issue nine, Gainsco asserts the evidence was factually and legally insufficient to support the damage awards and that the awards are excessive.

■ Under a factual sufficiency review, an appellate court considers and weighs all of the evidence, setting aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). We do not pass on the credibility of the witnesses or the weight given their testimony, and do not interfere with the jury's resolution of conflicting evidence. *Southwest Texas Coors, Inc.*, 948 S.W.2d at 950. Where, as in this case, the testimony at trial is conflicting, it is within the province of the jury to resolve the conflict. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986). Further, expert testimony on damages is only evidentiary and nonbinding upon the trier of fact. *Novosad*, 881 S.W.2d at 548.

■ Under a legal sufficiency standard, we review the evidence in the light most favorable the prevailing party and indulge every reasonable inference in favor of those findings to determine whether more than a scintilla of evidence supports the challenged findings. *See Associated Indem. Corp. v. CAT Contracting*, 964 S.W.2d 276, 285–86 (Tex.1998); *Formosa Plastics Corp. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998).

■ Here, the jury received conflicting testimony from physicians who treated Martinez, reviewing medical experts, and vocational rehabilitation witnesses. In spite of Gainsco's detailed recitation of Martinez's pre-existing injuries, the jury chose to disbelieve Gainsco's theory characterizing Martinez as a malingerer. *Peterson v. Reyna*, 908 S.W.2d 472, 476 (Tex. App.-San Antonio 1995, writ granted) *modified by* 920 S.W.2d 288 (Tex.1996). Because evidence exists in the record to support the verdict, we decline to sit as a thirteenth juror and overturn the decision of the jury. *See Carr v. Jaffe Aircraft Corp.*, 884 S.W.2d 797, 799, 802–03 (Tex. App.-San Antonio 1994, no writ).

■ Finally, Gainsco claims the jury award was excessive. A claim that damages are excessive is reviewed under a factual sufficiency analysis. *Pope v. Moore*, 711 S.W.2d 622, 624 (Tex.1986). In Martinez's case, the broad-form question comprised four elements: physical pain and mental anguish, loss of earning capacity, physical impairment, and medical care. We examine all the evidence to determine whether the award is supported by the evidence and order a remittitur only if the award is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* We are mindful that in assessing personal injury damages, the jury has wide latitude in determining the amount of the award. *Baptist Mem'l Hosp. Sys. v. Smith*, 822 S.W.2d 67, 78 (Tex.App.-San Antonio 1991, writ denied).

The record is replete with testimony from Martinez and Martinez's doctors, Valdez and Somerville, about Martinez's injuries and inability to work. As we previously discussed, the jury also received conflicting evidence throughout the trial as to the extent of Martinez's injuries and chose to disbelieve Gainsco's version of the evidence. We decline to overturn the jury's rulings when evidence exists to support the damage award. *McGalliard*, 722 S.W.2d at 694. In light of the evidence supporting Martinez's injuries, we cannot say the jury's award is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pope*, 711 S.W.2d at 624. Accordingly, we overrule Gainsco's ninth issue and affirm the judgment of the trial court.

Dissenting opinion by: PAUL W. GREEN, Justice.

PAUL W. GREEN, Justice, dissenting.

Because the jury's answers are inconsistent and cannot be reconciled, a new trial should be ordered. The majority instead affirms the judgment. Therefore, I respectfully dissent.

The contested issue at trial was whether Martinez was injured in the accident made the basis of the lawsuit. Martinez claims the accident caused him to be totally disabled; the defendants blame any disability on Martinez's pre-accident history of back problems. The jury answers failed to clearly resolve the issue.

On the one hand, the verdict implies that Martinez was injured. The jury awarded Martinez damages for past and future medical expenses and lost earnings, as well as for future physical impairment. However, the verdict also indicates the jury did not believe Martinez was injured. The jury awarded Martinez no damages for past and future physical pain and mental anguish, or for past physical impairment. These jury answers are factually inconsistent and cannot coexist and be the basis of any judgment.

The majority attempts to reconcile these inconsistent findings by arguing that the jury could have believed the injury sustained by Martinez was "progressive" in nature-that is, it was one of those injuries that does not exhibit symptoms today but manifests itself at some time in the future. While that may be hypothetically possible, it is not a reasonable conclusion in this case given the jury's answers. The jury evidently did not believe Martinez would suffer any physical or mental pain in the future as a result of this accident. And if not by physical pain or mental anguish, how would this "progressive" injury manifest itself? In the absence of physical pain or mental anguish, what then does the majority consider to be the basis for Martinez's award of future medical expenses, lost earning capacity, and physical impairment?

Martinez had the burden of proving he had been injured as a result of the accident in question. The verdict is internally inconsistent on this most salient question. I see no rational way to reconcile the verdict to support any judgment. We should order a new trial.