

**NUMBER 13-22-00534-CV**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

**KERISTON ALAIS THOMAS,**                                          **Appellant,**

**v.**

**FRANCISCO RODRIGUEZ ORTIZ,**                                  **Appellee.**

**On appeal from the 267th District Court
of Jackson County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Silva and Peña
Memorandum Opinion by Chief Justice Contreras**

This appeal arises from a motor vehicle accident involving appellant Keriston Alais Thomas and appellee Francisco Rodriguez Ortiz. The jury found Thomas liable for negligence and awarded Ortiz approximately $333,300 in damages. From this total, Thomas challenges only the award of $60,000 for future physical impairment damages. She argues that (1) there was insufficient evidence to support that award, and (2) the

court should remand the case for a new trial, or alternatively, suggest a remittitur. We affirm.

## I.  BACKGROUND

Thomas's vehicle struck the rear of Ortiz's vehicle at the intersection of Houston Highway and North Wells Street in Edna, Texas. Ortiz subsequently filed a petition alleging that Thomas was negligent and negligent per se.

At trial, Ortiz testified that he began feeling neck pain in the days following the accident. He was prescribed medication and underwent about four weeks of physical therapy, which initially relieved his pain. His pain resumed and he continued to have sharp pains in his neck. In addition to his physical pain, Ortiz testified that he no longer goes fishing or works on his house:

> [Counsel]: . . . . Before this collision, are there some things that you just loved doing and enjoyed doing prior to this collision?
>
> [Ortiz]: I really, really, really liked to go fishing.
>
> [Counsel]: Okay.
>
> [Ortiz]: I work on my house, and now I can't do it.

Later, Ortiz said he no longer goes fishing because he is "afraid that somebody else is going to crash into him." When asked whether his neck problems affect his ability to fish, Ortiz responded "I haven't gone fishing."

Gloria Guerra, Ortiz's friend, testified that Ortiz told her that he "couldn't sleep and stuff like that because [his neck] was hurting."[1] When asked about Ortiz's activities, Guerra testified:

> [Counsel]: Okay. Now, after the wreck, ha[ve] any of those attributes changed, and if so, how?

---

[1] We note that Ortiz's sleeping issues went away prior to trial.

2

[Guerra]: Well, he was that one person that on his weekends he would go fishing and all of that. Now, he doesn't want to step out of the house, whenever he comes over here, you know, just inside the house. He doesn't even do his work yard [sic] any[]more — yard work.

[Counsel]: He doesn't do his yard work?

[Guerra]: (Moving head up and down).

[Counsel]: Okay. Do you know why he doesn't do that?

[Guerra]: He says he hurts, but I don't know, maybe he just thinks a lot about the wreck. I don't know, you know.

Guerra further testified that Ortiz used to do "everything" around his house, but he no longer does so unless she "push[es]" him to do it. She also said that he no longer works on his car.

Finally, the jury heard from Ortiz's expert, Dr. Wilson Almonte, who testified about Ortiz's injuries. During his physical therapy treatment, Ortiz told Dr. Almonte about "[n]eck and left shoulder pain with pain radiating down his . . . arms." Dr. Almonte ordered an MRI of Ortiz's neck which revealed several disc herniations. Dr. Almonte explained that Ortiz's herniated discs were permanent, and that he may have pain for his lifetime and may need spinal surgery in the future. Dr. Almonte testified that Ortiz would reasonably need at least ten sessions of physical therapy a year and cervical facet joint injections twice a year. He testified that Ortiz would likely have additional temporary pain caused by each injection.

Dr. Almonte also testified regarding Ortiz's functional incapacity and possible future limitations:

[Counsel]: Okay. Based on a reasonable medical probability, do you have an opinion as to whether or not [Ortiz] has suffered any functional incapacity?

3

[Dr. Almonte]: Yes. Within a reasonable medical probability, yes. He complains of pain with increased activity, lifting, difficulty sleeping due to pain. Someone with this sort of injury can sometimes be limited in what they can do just because they have disc herniations. And sometimes when you do certain things or certain movements or, you know, lift certain things, they can exacerbate or make the pain worse because you're putting more pressure on those discs, and they're already herniated, and they can bulge back a little bit more or just cause pain.

[Counsel]: Okay. Do you have . . . an opinion as to whether or not that functional incapacity will be temporary or permanent?

[Dr. Almonte]: He has a permanent injury, so I would say within a reasonable medical probability that it's permanent. It's also been a year, and he has the same deficit.

. . . .

[Counsel]: Okay. Do you have an opinion as to whether or not [Ortiz] has suffered any physical impairment?

[Dr. Almonte]: Physical in the sense that he has disc herniations. He reports mild weakness in his upper extremity, and he has pain with . . . activity and certain movements.

. . . .

[Counsel]: Okay. Do you anticipate that [Ortiz] will have any future limitations?

[Dr. Almonte]: I think so. Currently, when I saw him, he said he was on light duty. I think this is likely going to be a permanent situation for him.

The jury ruled in favor of Ortiz and awarded damages as follows: $9,600 for past physical pain and mental anguish, $45,000 for future physical pain and mental anguish, $0 for past physical impairment, $60,000 for future physical impairment, $210,000 for

4

future medical care expenses,[2] $0 for past disfigurement, $0 for future disfigurement, $5,700 for the fair market value of Ortiz's vehicle, and $3,000 for loss of use of his vehicle.

This appeal followed.

## II. DISCUSSION

Thomas argues that the evidence was factually insufficient to support the award of $60,000 in future physical impairment damages.

## A. Applicable Law and Standard of Review

"When we review factual sufficiency, we consider and weigh all of the evidence and will set aside the verdict only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust." *City of Keller v. Wilson*, 168 S.W.3d 802, 826 (Tex. 2005) (quoting *Carter v. Steverson & Co.*, 106 S.W.3d 161, 166 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (emphasis removed)). "It is a familiar principle that in conducting a factual sufficiency review, a court must not merely substitute its judgment for that of the jury." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). "It is an equally familiar principle that the jury is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Id.*

"Physical impairment, also called the 'loss of enjoyment of life,' encompasses the loss of the injured party's former lifestyle." *Brazos Contractors Dev., Inc. v. Jefferson*, 596 S.W.3d 291, 312 (Tex. App.—Houston [14th Dist.] 2019, pet. denied). To receive damages for physical impairment, the plaintiff must show "(1) he incurred injuries that are distinct from, or extend beyond, injuries compensable as pain and suffering, loss of earning capacity, or other damages elements; and (2) these distinct injuries have had a

---

[2] The issue of past medical care expenses was not submitted to the jury.

5

substantial effect." *Id.*; *see Golden Eagle Archery*, 116 S.W.3d at 772 (noting that "the effect of any physical impairment must be substantial and extend beyond any pain, suffering, mental anguish, lost wages or diminished earning capacity").

If the jury is not provided with a definition of physical impairment, a court may infer that the jury "rationally conclude[d]" that loss of enjoyment of life can be part of physical impairment. *See Golden Eagle Archery*, 116 S.W.3d at 770. That is because, "if other elements such as pain, suffering, mental anguish, and disfigurement are submitted, there is little left for which to compensate under the category of physical impairment other than loss of enjoyment of life." *Id.* at 772. Additionally, if a jury "was instructed not to award damages for the same element more than once," then "an appellate court must presume that the jury followed these instructions," unless the record demonstrates otherwise. *Id.* at 771.

**B.      Analysis**

Thomas argues that there is insufficient evidence to show that the $60,000 in future physical impairment is a "distinct" injury not compensable under another element. *See Brazos Contractors*, 596 S.W.3d at 312; *Golden Eagle Archery*, 116 S.W.3d at 772. Her argument first focuses on Ortiz's and Guerra's testimony. She notes that Ortiz and Guerra did not explicitly testify that the reason Ortiz does not fish or work on his house is because of the pain in his neck. For example, Thomas argues that Ortiz's response when asked whether his neck problems affect his ability to fish—"I haven't gone fishing"—is too vague to show a distinct physical impairment resulting from the accident. Thomas also argues that any testimony from Ortiz and Guerra about his quality of life only pertained to his mental state. She points to Ortiz's statement that he no longer goes fishing because he

6

is "afraid that somebody else is going to crash into him," and Guerra's statement that "[Ortiz] says he hurts, but I don't know, maybe he just thinks a lot about the wreck." Thomas argues that this testimony only addresses Ortiz's fear of driving and is insufficient to prove a distinct physical impairment.

She next argues that, excluding Ortiz's and Guerra's testimony, what evidence is left "is too weak—factually insufficient—to support the physical impairment damages." She contends that Dr. Almonte's testimony is conclusory and speculative because it "primarily focuses on [Ortiz's] symptoms" and "does not identify a specific task or activity that [Ortiz] can no longer perform." She argues that Dr. Almonte's testimony is so conclusory and speculative as to be irrelevant. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) ("Opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact 'more probable or less probable.'"). Lastly, Thomas argues the award was unsupported since the same "vague testimony" resulted in a zero-dollar award for past physical impairment, indicating that "it was [also] too weak to support future physical impairment damages."[3]

We conclude there was factually sufficient evidence for the jury's verdict. While some testimony about Ortiz's future physical impairment may have been ambiguous, the jury was entitled to believe the testimony of witnesses at trial and determine their credibility. *See Golden Eagle Archery*, 116 S.W.3d at 761; *cf. Brazos Contractors Dev.*, 596 S.W.3d at 311 (concluding that the jury would not find sufficient evidence for future medical expenses in one witness alone, but the jury could find support for the witness's

---

[3] The zero-dollar amount for past physical impairment is not an issue on appeal.

7

testimony in components from other witnesses). Although the jury was not provided with a definition of physical impairment, Texas courts have generally defined it as an injury affecting the plaintiff's activities and the "loss of enjoyment of life." *See Golden Eagle Archery*, 116 S.W.3d at 765–66. Here, the jury was entitled to infer from the testimony related to Ortiz's herniated discs; his lack of fishing, yard work, and work on his car; and his recovery and possible limitations associated with a future spinal surgery, that his activities were affected and that he lost "enjoyment of life" as a result of the accident. *See Brazos Contractors Dev.*, 596 S.W.3d at 311, 313; *Barnhart v. Morales*, 459 S.W.3d 733, 747 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

Furthermore, Dr. Almonte's testimony was not so conclusory and speculative as to be non-probative. *See* TEX. R. EVID. 401; *Coastal Transp. Co.*, 136 S.W.3d at 232. In *Brazos Contractors Development*, the Fourteenth Court of Appeals held that testimony from two doctors was not conclusory or speculative because their opinions "adequately linked to the facts and evidence in the record." 596 S.W.3d at 313. Appellant argued that the doctors' testimony that appellee "would require daily assistance for the remainder of his life, particularly with activities of daily living, personal hygiene, and housekeeping chores" was too conclusory and insufficient to support the award in future physical impairment damages. *See id.* at 312. However, the court held the doctors' testimony was not conclusory or speculative because it was based on the appellee's medical records, X-rays, CT scans, MRIs, approximately fifty neuropsychological tests, and a personal examination of the appellee. *See id.* at 313. In this case, Dr. Almonte testified that Ortiz had "[n]eck and left shoulder pain with pain radiating down his . . . arms" and Ortiz "report[ed] mild weakness in his upper extremity, and he has pain with . . . activity and

8

certain movements," including "increased activity, lifting, [and] difficulty sleeping due to pain." As in *Brazos*, Dr. Almonte's conclusions were based on his physical examination of Ortiz, Ortiz's physical therapy records at Dr. Almonte's clinic, Ortiz's medical records, an X-ray scan, and an MRI scan. *See id.*

Lastly, Thomas argues the award for future physical impairment was unsupported since the same "weak" testimony resulted in a zero-dollar award for past physical impairment, and therefore, "it was too weak to support future physical impairment damages." It could be argued that the jury's zero-dollar award in past physical impairment is inconsistent with the $60,000-dollar award in future physical impairment because Ortiz had the same physical impairments from the accident at the time of trial as he would have in the future. *See Lee v. Huntsville Livestock Servs., Inc.*, 934 S.W.2d 158, 160 (Tex. App.—Houston [14th Dist.] 1996, no writ) ("[W]e find that the jury's award of past pain and anguish with future loss of earning capacity and physical impairment under these facts was fatally inconsistently [sic] with awarding no future pain and anguish damages."); *State Farm Cnty. Mut. Ins. Co. of Tex. v. Moran*, 809 S.W.2d 613, 620 (Tex. App.—Corpus Christi–Edinburg 1991, writ denied) (holding the zero-dollar awards for past pain and mental anguish, past physical impairment, and past medical expenses were fatally inconsistent with the jury's $50,000 award for future pain and mental anguish, $75,000 award for future physical impairment, and $175,000 award for future medical expenses); *see also Gainsco Cnty. Mut. Ins. v. Martinez*, 27 S.W.3d 97, 101–03 (Tex. App.—San Antonio 2000, pet. granted) (reconciling the apparent conflict between the jury award for future physical impairment and the zero-dollar award for past physical impairment because the jury could infer the plaintiff's injuries would be worse in the future).

However, unlike the cases cited above, Thomas does not argue there is a fatal conflict in the findings; rather, she points to the zero past-impairment finding as support for her factual-insufficiency argument. *Cf. Martinez*, 27 S.W.3d at 101–02 (analyzing whether the jury awards were "fatally inconsistent"); *Lee*, 934 S.W.2d at 159–60 (same); *Moran*, 809 S.W.2d at 619–20 (same). Thus, to the extent Thomas argues the jury's answers fatally conflicted, she has not preserved the issue because she did not object to the verdict before the jury was discharged, nor did she argue it in her motion for a new trial. *See* TEX. R. CIV. P. 295 (Correction of Verdict); TEX. R. APP. P. 33.1 (Preservation of Appellate Complaints); *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 518 (Tex. 2018) ("[T]o preserve error based on fatally conflicting jury answers, parties must raise that objection before the trial court discharges the jury.").

Thomas cites *Kelley v. Atlantic Gulf Stevedores, Inc.*, in support of her argument that the jury's zero-dollar award for past physical impairment indicates that the evidence was too weak for future physical impairment damages. 681 S.W.2d 275 (Tex. App.— Houston [14th Dist.] 1984, writ ref'd n.r.e.). She argues that *Kelley* is instructive because the court "held that where the jury awarded plaintiff $20,000 in damages for future loss of earning capacity based on th[e] evidence, the jury's award of zero damages for past lost earnings was 'against the great weight and preponderance of the evidence.'" (citing *Kelley*, 681 S.W.2d at 278–79). However, in *Kelley*, the zero-dollar awards in seven other categories were at issue. *See id.* at 275–76, 278–79 ("[The problem in this case] revolves around the fact that the jury awarded damages for loss of future earnings and no damages for any other category of damages submitted to the jury in the court's charge."). This case is distinguishable from *Kelley* because, as previously mentioned, there was sufficient

evidence for the jury to award the damages in future physical impairment and there is no challenge on appeal to the other damages awards.

In sum, the jury had sufficient evidence to award Ortiz damages for future physical impairment because it could have concluded from the cumulation of the witnesses' testimony that Ortiz had lost at least some enjoyment of life as a result of the accident. Dr. Almonte's testimony was not conclusory as it was based on reasonable medical sources. Finally, there is no case law directing us to deny an award in future physical impairment because the jury awarded zero dollars in past physical impairment, particularly in a sufficiency of the evidence challenge.

Given the evidence presented to the jury, we are unable to find that the verdict is so contrary to the weight of the evidence as to be "clearly wrong and unjust." *Barnhart*, 459 S.W.3d at 745 (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 407 (Tex. 1998)). We overrule Thomas's first issue. Because the evidence was factually sufficient to support a verdict of $60,000 in future physical impairment, we need not address Thomas's second issue of whether to remand the case for a new trial or suggest a remittitur. *See* Tex. R. App. P. 47.4.

### III.    CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
19th day of October, 2023.

11